Ms. Beverly Bassett, Secretary Arkansas Cemetery Board Heritage West Building, Third Floor 202 East Markham Little Rock, Arkansas 72201
Dear Ms. Bassett:
This is in response to your request for an opinion concerning the investment of cemetery permanent maintenance funds. Specifically, you note that each cemetery or cemetery company is required to maintain a permanent maintenance fund, the net income of which is to be used exclusively for the care and maintenance of the cemetery. The investment of this fund is governed by A.C.A.20-17-1013, which provides in pertinent part as follows:
 (a)(2) The principal of the fund shall be invested and remain invested in such securities and funds as are permitted by the laws of Arkansas for the investment of policy reserves of life insurance companies as set forth in 23-60-101 et seq., as now or hereafter amended, and in the common trust funds of state or national banks.
 (3) However, any permanent maintenance fund having assets of more than two hundred fifty thousand dollars ($250,000) may invest not more than fifty percent (50%) of its assets in nonassessable common stocks which are listed on a national securities exchange, preferred stocks meeting the requirements of 23-63-815, as now or hereafter amended, and investment trust securities meeting the requirements of 23-63-820, as now or hereafter amended of that act; and the diversification restrictions of 23-63-805 as now or hereafter amended shall not apply to investments in investment trust securities.
The statute above adopts the provisions of "A.C.A. 23-60-101 et seq." by reference. That statutory scheme governs many aspects of the insurance business. Arkansas Code Annotated 23-63-801 et seq. governs the allowable investments insurers may make. The subchapter sets out many kinds of allowable investments, (see A.C.A. 23-63-806 — 832), and also imposes some limitations on how these investments may be made. In this regard, A.C.A. 23-63-805
provides as follows:
 An insurer shall invest in or hold as admitted assets categories of investments only within applicable limits as follows:
 (1) ONE PERSON. An insurer shall not, except with the consent of the commissioner, have at any one time any combination of investments in or loans upon the security of the obligations, property, or securities of any one (1) person or issuer aggregating an amount exceeding ten percent (10%) of the insurer's assets, except that investments in certificates of deposit and savings and loan association deposits in any one (1) person may be the greater of ten percent (10%) of the insurer's assets or the maximum amount of federal insurance applicable to the deposit. This restriction shall not apply as to general obligations of the United States of America or of any state, or include policy loans made under 23-63-821.
* * *
 (3) LIFE INSURANCE RESERVES. A life insurer shall also invest and keep invested its funds in amount not less than seventy-five percent (75%) of the reserves under its life insurance policies and annuity contracts, other than variable annuities, in force, in cash, securities, or investments allowed under 23-63-801 — 23-63-833 and 23-63-835, other than stocks of subsidiaries of the insurer. [Emphasis added.]
Another restriction on the manner of insurance investment is found at A.C.A. 23-63-833, which provides in pertinent part as follows:
 In addition to investments excluded pursuant to other provisions of this code, an insurer shall not directly or indirectly invest in or lend its funds upon the security of:
* * *
 (2) Except with the advance consent of the commissioner, securities issued by any corporation or enterprise the controlling inte[re]st of which is held, or will be held after the acquisition by the insurer, directly or indirectly by the insurer or any combination of the insurer and the insurer's directors, officers, parent corporation, subsidiaries, or controlling stockholders. Investments in subsidiaries under 23-63-818 shall not be subject to this provision. [Emphasis added.]
Your question relates to the fact that the insurance commissioner may consent to deviation from the restrictions set out in the statutes above. The question posed is whether the cemetery board, like the insurance commissioner, is granted the authority to consent to a deviation from these restrictions, when they are applied to cemetery permanent maintenance funds by virtue of the adoption by reference.
It is my opinion that the answer to this question is "no".
It is stated in 82 C.J.S. Statutes, 370 that:
 In dealing with cases of legislation by reference, the primary consideration to be kept in view is the general scope and object of the amending legislation; and, in determining whether a reference adopted or included in particular clause of the first act, neither statute should be subject to a strained construction. [Footnotes omitted.]
It is my opinion that to construe A.C.A. 20-17-1013(a)(2) as adopting by reference the exemption to the insurance investment statutes, (i.e. that the insurance commissioner may consent to deviations from those statutes), would be a strained construction of the statute. To conclude that the cemetery board is given authority similar to the insurance commissioner in this regard would simply not be supported by the statute. It would be tantamount to the creation of new legislation which exists neither in the adoptive or adopted statutes. Absent a more definitive expression of legislative intent on the question, we cannot conclude that the cemetery board is granted this power solely by virtue of the adoption by reference.
Additionally, it has been held in at least one instance that where the provisions of one statute adopt those of another by reference, the adoption was intended to be of only the general provisions of the statute, and not as an adoption of the exceptions. Railway v. Burke, 53 Ark. 430 (1890). Applying this principle to the facts at hand compels the conclusion that the "consent" exception was not intended to be included in the adoption by reference.
Finally, A.C.A. 20-17-1013, the adopting statute, goes to some length to vary the investment restrictions set out in the adopted statutes. See A.C.A. 20-17-1013(a)(3). We find this indicative of a concerted effort by the legislature to particularize, to some degree, the provisions of the insurance statutes to cemeteries and cemetery companies. If the legislature had intended to grant the cemetery board the power to consent to a deviation from these varied restrictions, it could easily have done so expressly.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.